STAPBRS, J.,
delivered the -opinion of the court.
The first point made by the plaintiff is, that inasmuch as the conditional judgment was entered at the June rules 1870, and confirmed at the July rules, there was a final judgment by operation of law at the August term succeeding, and it was too late for the defendants to plead at the November court.
*The process was issued in May, was made returnable to the 1st Monday in July, and was served upon the defendants in June. It is probable that at the July rules the conditional judgment was entered: the record shows it was not however confirmed until the October rules. The cause of this delay is not explained, nor is it material now to inquire into it. The plaintiff did not complain of any irregularity in the proceeding, nor make any motion to correct it, if, in fact, such irregularity existed. So fair from it, he permitted the defendants at the November term to file their plea of payment without objection. Under these circumstances, it is of course too late to raise any question in this court as to the right of the defendants to set aside the office judgment, and to plead to the merits of the action.
Another point made for the plaintiff is, that pleas Nos. 2 and 3, tendered at the August term 1871, were unreasonably delayed, and they ought for that reason to have been rejected. It appears that the plaintiff objected to the filing of these pleas, but upon what ground does not appear. If upon the ground of delay the bill of exceptions ought to show it, otherwise the defendants may be surprised by an objection first taken here, and which, if made in the court below, might have been met by a very satisfactory explanation. There is enough, however, in the record to show that the pleas were not objected to upon any such ground.
At the November term 1870, the defendants pleaded payment with leave to plead specially. At the two following terms no action was taken in the case except to enter a general continuance. At the August court the defendant, in conformity with the leave previously given them, tendered their pleas. The plaintiff objected *to the second and third; but he made no opposition to the first.
This simple statement is sufficient to show that the objection of the plaintiff was not based upon the ground of unreasonable delay, for that objection was applicable as well to the first as to the second and third pleas.
But even if this objection had been urged in the court below, it is very doubtful, to say the least, whether it ought to have prevailed. The plaintiff did not object to the permission given the defendants to plead at a future term, and it does not appear that the defendants in exercising the privilege accorded them were guilty of any unreasonable delay.
Another objection made by the plaintiff is to the failure of the defendants to put in a rejoinder to plaintiff’s replications to pleas Nos. 2 and 3 respectively.
The record states that the plaintiff replied specially to pleas Nos. 2 and 3, and generally to plea No. 1, and “issue was joined thereon.” Upon the authority of South Side R. R. Co. v. Daniel, 20 Gratt., 344, *395 and cases there cited, this is sufficient to show that the issue was in fact joined and duly tried by a jury.
There are other points presented in the petition, but it is deemed unnecessary to notice them, as they were not insisted upon in the argument. Those already mentioned constitute the principal objections of the plaintiff to the preliminary proceedings in the court below. Having disposed of them, it is proper to consider the case upon its merits.
The main question before us arises upon the plaintiff’s first bill of exceptions, and is presented in the sixth assignment of error. This alleged error is in an instruction given to the jury on motion of the defendants. This instruction declares substantially, that if *the defendants, as early as some day in the month of March, 1859, dissolved by mutual consent, the partnership previously thereto existing between them, that neither partner had thereafter authority to create any new obligation, or execute a note therefor in the name of the firm, binding upon the other partners, unless the new obligation was created in the usual course of the partnership business to a person who had no notice or knowledge of the dissolution of the partnership. And if the jury should believe from the evidence, that as early as the spring of 18S9 the defendants ceased to buy and sell goods, their store-house was closed up, H. J. Dickinson, the activo partner of the firm, had moved away from the store-house, and had engaged in another employment, that their store-house remained closed up until the note in controversy was executed, and was then still closed up, that nothing prior to the execution of the note was done in the business of the partnership after the house was closed, in the spring of 1859, except what was done by the active partner, H. J. Dickinson, in settling up the business, and that all these facts were known to the plaintiff at the time the note in controversy was executed, on the 19th March, 1860, then these facts are sufficient to charge the plaintiff with knowledge of the dissolution, and the jury should consider him as having such knowledge.
The manifest error in this instruction is in assuming that the facts therein mentioned, if brought home to the plaintiff, were sufficient of themselves to charge him with actual knowledge of the dissolution of the partnership, whether in fact he had or had not such knowledge.
It seems that the defendants did not give notice, public or private, of the dissolution : they did not notify their customers of the fact: they did not even *take the trouble to publish or post it at their place of business. At least the instruction does not assume that either of these acts was done by the defendants; but it does assume that, in the absence of each and all of them, certain other acts constituted notice which the plaintiff was not permitted to controvert. Now these facts, as stated in the instruction, may be sufficient to satisfy a jury that the plaintiff was informed of the dissolution of the partnership; but certainly they do not constitute notice: they are not sufficient as a matter of law, to charge the plaintiff with such notice. Each and all of them may have been known to him, and still the plaintiff may not have had such knowledge or information in regard to the dissolution as would invalidate the note in his possession.
The instruction was therefore a manifest invasion of the province of the jury, and as such was clearly erroneous. The learned counsel insists, however, that no injustice was done the plaintiff, because the question of notice is not involved in the inquiry. His proposition is, that one partner cannot, by a new contract entered into after the dissolution, impose any new obligation upon his copartners without some special authority for that purpose. The note in controversy having been executed after the partnership was dissolved, was not binding upon the partners who did not unite in its execution, although the creditor may have had no notice of such dissolution. The plaintiff could not therefore have been prejudiced by anything in the instruction upon the subject of notice, however erroneous it may have been.
If the learned counsel’s premises are correct, his conclusion is undoubtedly correct also. But are his premises correct? The only authority he cites to sustain his position is that of Parker v. Cousins, 2 Gratt. *372. That case does, unquestionably, affirm the general proposition that one partner cannot, after the dissolution, create a binding obligation upon the firm without some special authority for that purpose; but this decision was made upon a state of facts which showed that the person dealing with the partner was informed of the dissolution at the time of the renewal of the note.
The principle is well established, that if a partner contracts in the name of the firm with a third person after the partnership is dissolved, but that fact is not made public, or known by such third person, the law considers the contract as being made with the firm and upon their credit. The rule upon this subject is thus laid down in Ivindly on Partnership, p. 328: “So if a partnership is dissolved, or one of the known members retires from the firm, until the dissolution or retirement is duly notified, the power of each to bind the rest remains in full force; although as between themselves, a dissolution or retirement is a revocation of the authority of each to act for the other. Thus if a known partner retires (which is in fact a dissolution), and no notice is given, he will be liable to be sued in respect of a promissory note made since his retirement by his late partner, even though the plaintiff had no dealings with the junior before the making of the note. And in determining which was first in point of time, to wit: notice of the dissolution or the making of the note, effect must be given to the presumption that the instrument was *396 made and issued on the day it bears date, unless some reason to the contrary can be shown.”
In Ketcham & Black v. Clark, 6 John. R. 144, the draft was accepted in the name of the firm after the dissolution. It was held that both partners were *bound by the acceptance; there being-no evidence of any public notice of the dissolution of the partnership, nor any special notice of its dissolution to the party dealing with the firm.
It is useless to multiply citations upon the point. The authorities are believed to be almost uniform in support of the proposition. National Bank v. Norton, 1 Hill’s N. Y. R., 572; Story on Partnership, $$ 160, 161, 334, 336.
In regard to notice of dissolution, a distinction has been justly made between persons who have had previous dealings with the firm, and those who have had no such dealings. As to the former, it has been universally held that actual notice is indispensable. It must not be inferred, however, that special notice must be given to each customer. If actual knowledge of the dissolution is brought home to the party, he will be concluded, although no notice whatever may have been given. Whether in such case the evidence is sufficient to justify the inference of actual knowledge, is a question of fact for the consideration of a jury, under the supervision of the court. Irby v. Vining, 2 McCord’s R. 379; Coddington v. Hunt, 6 Hill’s R. 595; Collyer on Partnership, § 332.
It may be proper to- add, that these rules apply only to cases where the dissolution is by act of the parties. It is well settled, that upon the death or bankruptcy of a partner, notice of the dissolution to third persons is not necessary. The reason seems to be, that in those cases the dissolution is by operation of law. It would be the height of injustice to allow the acts of the other partners to bind the estates of persons who are incapable of acting themselves, or of continuing an authority for that purpose.
It follows, from what has been said, that the Circuit *court erred in giving the instruction set out in plaintiff’s first bill of exceptions. This view renders it unnecessary to consider particularly the instruction asked for by the plaintiff and refused by the court, which is set out in the second bill of exceptions.
It is sufficient to say, that where there is evidence tending to make out the supposed case, however inadequate, or however little weight it may be deemed entitled to, it is best and safest to give the instruction if it propound the law correctly. Early v. Garland’s lessee, 13 Gratt. 1.
This well established principle will guide the Circuit court if upon a future trial the question shall again arise upon a like instruction.
Eor the error already' mentioned, the judgment of the- Circuit court must be reversed, and the cause remanded to be proceeded with in accordance with the views herein announced.
Judgment reversed.